UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS (Boston)


SCOTT M. CUMMINGS,
      Petitioner,


     v.                       Action No. 1:05-cv-10839-JLT
                                   (Petition from  01-cr-10410-JLT)


UNITED STATES OF AMERICA,
      Respondent


SUPPLENTAL MEMORANDUM IN OPPOSITION
TO GOVERNMENT'S MOTION TO DISMISS


Preliminary[1]

Petitioner Scott M. Cummings believes there are two reasons to deny the government's motion:

First, the government's motion to dismiss is contrary to the law of this Circuit concerning his particular ineffective assistance of counsel ("IAC") claim. A petitioner alleging IAC for failure to file an appeal does not need to make a showing that there is a meritorious appellate issue, as the government argues. See, *Bonneau v. US*, 961 F.2d 17 (1 Cir. 1992)(reinstating lost right to direct appeal because of counsel's failure to file notice as instructed), discussed, *infra*.

Secondly, even if Mr. Cummings' claims were solely claims to collateral and not direct relief (by reinstatement of his appeal), the issue of *Blakely*'s

---

[1] Counsel offers this supplemental memorandum in opposition to the government's motion to dismiss petitioner Scott M. Cummings' motion to vacate his sentence under 28 USC §2255.

retroactivity as a wartershed rule is far from settled as the government's brief implies. On June 5, 2006, the Supreme Court accepted *certiorari* in *Burton v. Waddington*, No. 05-9222, raising a primary claim for the retroactive applicability of *Blakely* on *habeas* corpus review. At a minimum, this Court may wish to stay the proceedings pending outcome of that claim.

FACTS

The facts of this action are set forth in the petition. The government disputes only that Mr. Cummings instructed his counsel to file a direct appeal, a fact that would be all but impossible for the government to know. See, government's May 10, 2005 motion to dismiss (R. Doc. 3, p. 1).

Mr. Cummings claims that his counsel failed to object to the application of certain enhancements on a judicial finding and that counsel failed to file a notice of appeal.

Counsel notes that that co-defendant Jonathan Nerie was convicted after a full trial and received a sentence identical to Mr. Cummings (without having accepted responsibility like Mr. Cummings). The fact that a codefendant would receive the same sentence without having accepted responsibility indicates that Mr. Cummings would have benefited from the rule of *Booker*, *infra*.

ARGUMENT

POINT I:
PETITION CANNOT BE DISMISSED
<u>WITHOUT FACTUAL DETERMINATION</u>

Dismissal of petitioner's IAC claim would contravene the law of this

Circuit.  Where petitioner claims IAC for counsel's failure to file an appeal,

petitioner need not show his appeal had merit.  See, *Bonneau v. US*, 961 F.2d 17 (1

Cir. 1992).  The ruling in *Bonneau* is a one-issue ruling on an appeal denying 2255

relief and it is wholly apposite to this case:

> The only issue is whether appellant, Dennis Bonneau, who lost his
> right to a direct appeal of his conviction and sentence through the
> dereliction of his counsel, is entitled to a new appeal without first
> showing that there is a meritorious appellate issue. We hold that he
> is. *Id.*

The issues in *Bonneau* were identical to this case.  Bonneau had argued in

support of his § 2255 motion that he did not have to show that he had a

meritorious issue for appeal in order to obtain the relief sought by the § 2255

motion -- the right to appeal his conviction and sentence. In denying the § 2255

motion, the district court stated that courts of appeals had allowed the

government to oppose relief by arguing that the defaulted appeal would have

lacked merit. (The district court reasoned that nothing in Supreme Court

jurisprudence suggested that harmless error analysis would be invalid in

determining such a 2255 claim and expressly reject Bonneau's  contention that he

did not have to show the existence of a meritorious appellate issue.

The First Circuit disagreed and found error.  It reasoned that the plain wording of the Sixth Amendment guarantee to counsel encompasses counsel's assistance whenever necessary to assure a meaningful 'defence.'" *Bonneau*, *supra*, citing *United States v. Wade*, 388 U.S. 218, 225 (1967) and *Powell v. Alabama*, 287 U.S. 45, 69 (1932) (Criminal defendant "requires the guiding hand of counsel at every step in the proceedings against him.").

The petitioner need not show that his appeal would have been meritorious because the failure to file a notice of appeal is deemed to undermine the adversarial process.  In *Bonneau*, the First Circuit reasoned that a defendant bringing an appeal as of right from his conviction is attempting to demonstrate that the conviction, with its consequent drastic loss of liberty, is unlawful. An unrepresented appellant, it reasoned, was like an unrepresented defendant at trial and would be unable to protect the vital interests at stake. Nominal representation would not suffice.  The court cited *Strickland*, quoting "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Bonneau*, citing *Strickland v. Washington*, 466 U.S. 668, 686 (1984).

The First Circuit reasoned, however, that the ordinary two-part analysis of deficient performance and prejudice need not apply to ineffective assistance claims alleging failure to file an appeal.  The First Circuit noted language from other precedent that certain IAC claims need not demonstrate prejudice

"Some constitutional violations, however, by their very nature cast so much doubt on the fairness of the trial process that, as a matter of law, they can never be considered harmless. Sixth Amendment violations that pervade the entire proceeding fall within this category." *Bonneau* citing *Satterwhite v. Texas*, 486 U.S. 249, 256 (1988).

The Court's rationale founded on two further Supreme Court cases, *Rodriquez v. United States*, 395 U.S. 327 (1969)(petitioner under 2255 prevented from appealing conviction by counsel's failure to file a notice of appeal within the 10-day period) and *Penson v. Ohio*, 488 U.S. 75 (1988)(indigent defendant whose appointed appellate counsel was allowed to withdraw on the basis of a conclusory statement that the case had no merit).  Bonneau quoted the following language from *Rodriquez*:

> Those whose right to appeal has been frustrated should be treated exactly like any other appellants; they should not be given an additional hurdle to clear just because their rights were violated at some earlier stage in the proceedings. Accordingly, we hold that the courts below erred in rejecting petitioner's application for relief because of his failure to specify the points he would raise were his right to appeal reinstated.

*Rodriquez, supra,* 395 U.S. at 330.

POINT II:
RETROACTIVITY OF
BLAKELY NOT DETERMINED

The government argues that *Blakely* and *Booker* are not retroactive on collateral review and, therefore, that any claim to relief by Mr. Cummings is

barred. *United States v. Booker* and *Fanfan*, No. 04-104, 543 U. S. ____, 125 S. Ct. 738 (2005); *Cirilo-Munoz v. United States,* 404 F.3d 527 (1 Cir. 2005)(Boudin, CJ).

The issue is far from resolved. The rationale usually advanced in favor applying Booker retroactively is fundamental and admits of little confusion. Prior burden of proof rulings, such as *In re Winship*, 397 U.S. 358 (1970) and *Mullaney v. Willbur*, 421 U.S. 684 (1975), had been held retroactive because they (like *Apprendi/Booker* claims) were essential to accurate fact-finding, *see Ivan v. v. City of New York*, 407 U.S. 203 (1972) (*Winship* retroactive); *Hankerson v. North Carolina*, 432 U.S. 233 (1977) (*Mullaney* retroactive). Likewise, it is often argued, the rule of *Booker* contained "'watershed rules of criminal procedure' implicating the fundamental fairness and accuracy of the criminal proceeding." *Saffle v. Parks*, 494 U.S. 484, 494-95 (1990)(quoting *Teague*, 489 U.S. at 311).

However, an even more basic argument exists that *Booker* and *Blakely* announce no new rule but are merely an iteration of *Apprendi.* Claims accruing after June 24, 2000 (issuance date of *Apprendi*) raising *Blakely*- and *Booker*-type arguments are a mere extension of *Apprendi* and, therefore, not barred by Teague as retroactive. *Apprendi v. New Jersey*, 530 U.S. 466 (2000); *Teague v. Lane*, 489 U.S. 288, 311 (1989).

The Supreme Court has now agreed to consider such an argument. It granted certiorari in *Burton v. Waddington*, No. 05-9222, involving the retroactive applicability of *Blakely* to a *habeas corpus* claim. (Counsel attaches a copy of the certiorari petition for the Court's review.) In *Burton*, petitioner received an

exceptional sentence of 258 months above  the 305-month ceiling of the Washington statutory sentence range and the sentence became final after *Apprendi v. New Jersey* but before *Blakely v. Washington*.  The issues raised on appeal to the Supreme Court are (1) whether the holding in *Blakely* is a new rule or is it a rule "*dictated by*"*Apprendi?* And (2) if *Blakely* is a new rule, whether to give retroactive application to the requirement that facts resulting in an enhanced statutory maximum be proved beyond a reasonable doubt.

Accordingly, counsel believes that the court may wish to hold this petition in abeyance for a determination of *Burton.*

CONCLUSION

For the reasons set forth above, the respondent's motion should be denied.

Dated this 16th day of June, 2006 at Boston, Massachusetts.

/s./ *Kevin L. Barron*
Counsel for Petitioner
Scott Martin Cummings
453 Washington St. 5FL
Boston, MA 02111-1325
Tel. No. 617-482-6368
kevin.barron@mac.com
Mass. BBO No. 550712

CERTIFICATE

Counsel certifies that he has, this 16th day of June, 2006, caused AUSA Gregory Moffatt, to be served with a true copy of this motion through the CM/ECF of this District and, further, the no other party requires service by other means.

/s./ *Kevin L. Barron*
Counsel for Petitioner

No. _____

RECEIVED
FEB 13 2006
ATTORNEY GENERALS OFFICE
CRIMINAL JUSTICE DIV-OLYMPIA

# IN THE SUPREME COURT OF THE UNITED STATES

October Term, 2006

---

LONNIE L. BURTON

Petitioner,

v.

DOUG WADDINGTON,

Respondent.

---

*ON PETITION FOR A WRIT OF CERTIORARI TO THE*
*UNITED STATES COURT OF APPEALS*
*FOR THE NINTH CIRCUIT*

---

# PETITION FOR A WRIT OF CERTIORARI

---

Brian Tsuchida
*Counsel of Record*
Office of the Federal Public Defender
1601 Fifth Avenue, Suite 700
Seattle, WA  98101
(206) 553-1100

*Counsel for Applicant*

QUESTIONS PRESENTED

Mr. Burton was given an exceptional sentence of 258 months *above* the 305 month ceiling of the statutory sentencing range and this Washington State sentence became final after *Apprendi v. New Jersey*, but before *Blakely v. Washington*:

1.    Is the holding in *Blakely* a new rule or is it dictated by *Apprendi*?
2.    If *Blakely* is a new rule, does its requirement that facts resulting in an enhanced statutory maximum be proved beyond a reasonable doubt apply retroactively?

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

OPINIONS BELOW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

CONSTITUTIONAL AND STATUTORY PROVISIONS INVOLVED . . . . . . . . . . . . 2

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

REASONS FOR GRANTING THE PETITION . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

     A.    This Court Should Resolve the Split of Authority on Whether *Blakely* Is a
New Rule. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

          1.    The Courts Are Divided Over this Issue. . . . . . . . . . . . . . . . . . . . . 6
          2.    The Decision Below Contravenes This Court's Precedent. . . . . . . . 8

     B.    This Court Should Resolve the Important Issue of Whether *Blakely*
Applies Retroactively If It Is a New Rule. . . . . . . . . . . . . . . . . . . . . . . . 12

          1.    Through a Combination of Cases, This Court Has
Already Made *Blakely* Retroactive. . . . . . . . . . . . . . . . . . . . . . . . 12

          2.    If *Blakely* Announced a New Rule, Its Requirement of Proof
Beyond a Reasonable Doubt is A Watershed Rule Of
Constitutional Procedure That Should Be Applied Retroactively
Under The *Teague* Rule On Retroactivity. . . . . . . . . . . . . . . . . . . 14

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Appendix

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Apprendi v. New Jersey*, 530 U.S. 466 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

*Beard v. Banks*, 542 U.S. 406 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 10

*Blakely v. Washington*, 542 U.S. 296 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

*Burton v. Waddington*, 142 Fed. Appx. 297 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . 5, 6

*Cage v. Louisiana*, 498 U.S. 39 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Caspari v. Bohlen*, 510 U.S. 383 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Graham v. Collins*, 506 U.S. 461 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Hankerson v. North Carolina*, 432 U.S. 233 (1977) . . . . . . . . . . . . . . . . . . . . . . . . 13

*Ivan V. v. City of New York*, 407 U.S. 203 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Mullaney v. Wilbur*, 421 U.S. 684 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Ring v. Arizona*, 536 U.S. 584 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

*Saffle v. Parks*, 494 U.S. 484 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Schardt v. Payne*, 414 F.3d 1025 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . 5, 6, 7

*Schriro v. Summerlin*, 542 U.S. 348 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

*Teague v. Lane*, 489 U.S. 288 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 14, 15

*Tyler v. Cain*, 533 U.S. 656 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

*United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738 (2005) . . . . . . . . . . . . . . 8, 11, 12

*United States v. Price*, 400 F.3d 844 (10th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . 7

*In re Winship*, 397 U.S. 358 (1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 16

## FEDERAL STATUTES

28 U.S.C. § 1254(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

## STATE CASES

*State v. Gomez*, 163 S.W.3d 632 (Tenn. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

*State v. Johnson*, 121 P.3d 285 (Colo. Ct. App. 2005) . . . . . . . . . . . . . . . . . . . . . . . . 8

## STATE STATUTES

Wash. Rev. Code § 9.94A.390 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Wash. Rev. Code § 9.94A.400 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

## MISCELLANEOUS

R. Craig Green, *Apprendi's Limits*, 39 U. Rich. L. Rev. 1155, 1169-82 (2005) . . . . . . . . 9

R. Craig Green, *Booker and Fanfan: The Untimely Death (and Rebirth?) of the Federal Sentencing Guidelines*, 93 Geo. L.J. 395, 401 (2005) . . . . . . . . . . . . . . . . . 11

*Rethinking Retroactivity*, 118 Harv. L. Rev. 1642 (2005) . . . . . . . . . . . . . . . . . . . . . . 14

Kate Stith, *Crime and Punishment Under the Constitution*, 2004 Sup. Ct. Rev. 221, 252-55 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 11

# IN THE SUPREME COURT OF THE UNITED STATES

———————

No. ————

LONNIE L. BURTON, PETITIONER,

v.

DOUG WADDINGTON, RESPONDENT.

———————



*ON PETITION FOR A WRIT OF CERTIORARI TO THE
UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT*

———————

**PETITION FOR A WRIT OF CERTIORARI**

———————

Lonnie Burton petitions for a writ of *certiorari* to the United States Court of Appeals for the Ninth Circuit in this case.

## OPINIONS BELOW

The opinion of the United States Court of Appeal for the Ninth Circuit was filed on July 28, 2005, and is attached at App. 1a. The Ninth Circuit denied Mr. Burton's Petition for Rehearing and Suggestion for Rehearing En Banc. This order is reproduced at App. 4a.

## JURISDICTION

The Ninth Circuit issued its opinion on July 28, 2005. The Ninth Circuit denied Mr. Burton's Petition for Rehearing and Suggestion for Rehearing En Banc on October 13, 2005. On December 28, 2005, Justice O'Connor extended the time within which to file this petition for a writ of *certiorari* to and including February 10, 2006. This Court has jurisdiction under 28 U.S.C. § 1254(1).

## CONSTITUTIONAL AND STATUTORY PROVISIONS INVOLVED

The Sixth Amendment to the United States Constitution provides in relevant part: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury. . . ."

The Fourteenth Amendment to the United States Constitution provides in relevant part: "[N]or shall any state deprive any person of life, liberty, or property, without due process of law."

2

# STATEMENT OF THE CASE

1. On October 24, 1994, Mr. Burton was convicted of rape in the first degree (count I), robbery in the first degree (count II), and burglary in the first degree (count III).

When Mr. Burton was sentenced on March 13, 1998,[1] the sentencing court calculated the statutory standard range to be 234-304 months on the rape charge, 153 months to 195 months on the robbery charge, and 105-134 months on the burglary charge. Under Washington law, such sentences presumptively run concurrently. *See* Wash. Rev. Code § 9.94A.400 (1998). "Consecutive sentences [for these convictions] may only be imposed under the exceptional sentence provisions of RCW 9.94A.120 and 9.94A.390(2)(g) or any other provision of RCW 9.94A.390." *Id.*

In this case the sentencing court imposed an exceptional sentence 258 months *above* the 304 month maximum of the statutory standard range when it ordered that the standard range sentences for these offenses run consecutively. Specifically, the court imposed a prison term of 304 months on the rape charge, 153 months on the robbery charge, and 105 months on the burglary charge and then ordered that the prison terms run *consecutively*.[2]

---

[1] This was Mr. Burton's third sentencing on these offenses. He was first sentenced on December 9, 1994, to an exceptional sentence of 562 months. He was resentenced in April 1995, with a lower offender score after an earlier conviction was overturned. At this second sentencing, the judge again imposed an exceptional sentence of 562 months. Mr. Burton appealed this second sentence and the Washington Court of Appeals ordered Mr. Burton be resentenced on grounds unrelated to those presented in this petition.

[2] The sentencing court also imposed an alternative exceptional sentence of 506 months on the rape conviction, 153 months on the robbery conviction and 105 months on the

In support of this upward departure from the statutory standard range, the court made the following findings pursuant to Wash. Rev. Code § 9.94A.390: (a) the "defendant's long criminal history, combined with the 'multiple offense policy,' results in a sentence that is clearly too lenient in light of the purposes of the Sentencing Reform Act"; (b) the defendant's actions amounted to "deliberate cruelty" to the victim; (c) the defendant's actions "demonstrate sophistication and planning of sort that makes the defendant a significantly different offender." Findings of Fact and Conclusions of Law Regarding Imposition of Exceptional Sentence at 8-10. Mr. Burton contested these findings.

2. Mr. Burton appealed his sentence to the Washington Court of Appeals. That court denied relief on July 17, 2000, more than one month after this Court's June 6, 2000 opinion in *Apprendi v. New Jersey*, 530 U.S. 466 (2000). On December 5, 2000, the Washington Supreme Court denied Mr. Burton's request for review. Accordingly, Mr. Burton's appeal did not become final for retroactivity purposes until March 5, 2001. *See Caspari v. Bohlen*, 510 U.S. 383, 390 (1994) ("A state conviction and sentence become final for purposes of retroactivity analysis when the availability of direct appeal to the state courts has been exhausted and the time for filing a petition for a writ of certiorari has elapsed or a timely filed petition has been finally denied.").

---

burglary conviction. This alternative sentence was vacated by the Washington Court of Appeals for reasons unrelated to this petition.

3. Mr. Burton subsequently filed a Personal Restraint Petition challenging his exceptional sentence under *Apprendi v. New Jersey*. The Supreme Court of Washington denied relief, stating: "*Apprendi* does not apply to exceptional sentences that are otherwise within the statutory maximum for the crime." Ruling Denying Review, No. 72657-4 (July 16, 2002).

4. Mr. Burton filed a habeas petition in January 2002, arguing that his "sentence in excess of top of range set by statute violated due process when factors used to support it were not submitted to a jury and proven beyond a reasonable doubt." The district court denied Mr. Burton's petition.

5. Mr. Burton sought a certificate of appealability on his *Apprendi* claim. The Ninth Circuit initially denied this request, but the day after this Court's ruling in *Blakely v. Washington*, 542 U.S. 296 (2004), the Ninth Circuit granted a certificate of appealability on the *Apprendi* claim. Mr. Burton argued that *Apprendi* compelled the conclusion that his exceptional sentence under Washington's Sentencing Reform Act was unconstitutional.

6. The Ninth Circuit affirmed the district court's denial of habeas relief. *See Burton v. Waddington*, 142 Fed. Appx. 297 (9th Cir. 2005), App. 1a. Relying on *Schardt v. Payne*, 414 F.3d 1025 (9th Cir. 2005) which addressed the identical issue a few weeks earlier, the Ninth Circuit held that *Blakely* "established a new rule that does not apply retroactively on collateral review." *Id.* at 299. Then, citing only pre-*Blakely* precedent

about the *non-statutory* Federal Sentencing Guidelines, the Ninth Circuit also held that

"[b]ecause the sentence on any individual count, and the total sentence imposed does not

exceed the statutory maximum of life imprisonment, it does not violate *Apprendi*." *Id.* at

299-300. The Ninth Circuit did not explain why these cases compelled the same result

under Washington's *statutory* sentencing scheme.

7. Mr. Burton's Petition for Rehearing and Suggestion for Rehearing En Banc was

denied on October 13, 2005.

## REASONS FOR GRANTING THE PETITION

This Court has held that under the doctrine set forth in *Teague v. Lane*, 489 U.S. 288

(1989), new procedural rules do not apply retroactively unless they fall into one of two

exceptions. *See Beard v. Banks*, 542 U.S. 406, 411 (2004). The lower courts are divided

over whether *Blakely* is a new rule. This Court should grant this petition and conclude

that the holding in *Blakely* is not a new rule. If this Court decides *Blakely* is a new rule, it

should address the important issue of whether *Blakely* applies retroactively and conclude

that it does.

**A.    This Court Should Resolve the Split of Authority on Whether *Blakely* Is a New
Rule.**

**1.    The Courts Are Divided Over this Issue.**

The Ninth Circuit has held that *Blakely* announced a new rule. *See Burton*, 142 Fed.

Appx. at 299-300297, App. 3a; *Schardt*, 414 F.3d at 1032-35. The sole articulated

rationale for the Ninth Circuit's conclusion is that "[e]very circuit court of appeals that

addressed the question presented in *Blakely* reached the opposite conclusion from the rule

subsequently announced by the Supreme Court." *See Schardt*, 414 F.3d at 1035.  In

support of this statement, the Ninth Circuit relied *exclusively* on cases that addressed

whether the *Apprendi* rule should be applied to the *non-statutory* Federal Sentencing

Guidelines, not the *statutory* guidelines at issue in *Blakely* and Mr. Burton's case.  *Id.*

    One other federal circuit court has also held that *Blakely* announced a new rule.

Addressing the application of *Blakely* to a petitioner sentenced under the Federal

Sentencing Guidelines and whose sentence was final after *Apprendi* but before *Blakely*,

the Tenth Circuit held that *Blakely* announced a new rule.  *See United States v. Price*, 400

F.3d 844, 846-48 (10th Cir. 2005).  The Tenth Circuit reasoned that before *Blakely*, the

Tenth Circuit and other circuit courts held that *Apprendi* did not apply to judge-

determined facts that resulted in a sentence below the statutory maximum and that it was

not until *Blakely* that the "Supreme Court clarified that 'the "statutory maximum" for

*Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of*

*the facts reflected in the jury verdict or admitted by the defendant.*'"  *Id.* at 847 (quoting

*Blakely*).  The Tenth Circuit, like the Ninth Circuit, supports this reasoning by citing only

cases involving the *non-statutory* Federal Sentencing Guidelines, not the *statutory*

guidelines addressed in *Blakely*.  *Id.* at 847.

    In direct conflict with the Ninth and Tenth Circuits, the Tennessee Supreme Court

held that *Blakely* is not a new rule.  *See State v. Gomez*, 163 S.W.3d 632, 649-50 (Tenn.

2005). The Tennessee Supreme Court reasoned that the "language of *Booker* demonstrates that the United States Supreme Court does not regard *Blakely* as having announced a new rule of law." *Id.*

The Colorado Court of Appeals has also held that *Blakely* did not announce a new rule. *See State v. Johnson*, 121 P.3d 285, 286-87 (Colo. Ct. App. 2005). It concluded that *Blakely* simply "applied and explained a rule expressed in *Apprendi*." *Id.* at 286.

The conflict between these courts cannot be resolved without this Court's intervention. As the Tennessee Supreme Court noted, "Although some other courts and jurists have concluded that *Blakely* announced a new rule, the United States Supreme Court is the final arbiter of this issue." *Gomez*, 163 S.W.3d at 650.

## 2.    The Decision Below Contravenes This Court's Precedent.

The Ninth Circuit's rejection of Mr. Burton's argument that the *holding* in *Blakely* is a "new rule" ignores this Court's analysis in both *Blakely* and *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738 which, while not expressly addressing the issue, make clear the holding in *Blakely* is not a new rule, and contravenes this Court's precedent on the definition of a new rule.

Straightforward application of *Apprendi* was all that was necessary to decide *Blakely*. *See* Kate Stith, *Crime and Punishment Under the Constitution*, 2004 Sup. Ct. Rev. 221, 252-55 (2005) (*Apprendi* "foreordained" the result in *Blakely*; "[a]ll the Court had to do to decide *Blakely* was to apply the rule exactly as *Apprendi* had stated it");

R. Craig Green, *Apprendi's Limits*, 39 U. Rich. L. Rev. 1155, 1169-82 (2005) ("the Court simply restated and applied *Apprendi*'s rule" in an "identical" manner).

    *Apprendi* involved two statutorily established sentencing thresholds: one for committing the crime without racial motivation, and one for committing that class of crime with a racial motivation. This Court ruled that the "statutory maximum" was the maximum statutory sentence the defendant could receive "if punished according to the facts in the jury verdict alone." 530 U.S. at 483; *see also id.* at 469.

    In *Blakely*, this Court again addressed the situation involving two statutorily established thresholds – one for committing the crime without exceptional circumstances, and one for committing that class of crime with exceptional circumstances – and using almost verbatim language from *Apprendi*, held that its "precedents make clear" that "the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.*" 542 U.S. at 303. This Court continued: "The 'maximum sentence' is *no more* [the outer limit for the class of felony] here than it was 20 years in *Apprendi* (because that is what the judge could have imposed upon finding a hate crime) . . . ." 542 U.S. at 304.

    Neither the *Blakely* majority nor any of the dissenters even hinted that holding in *Blakely* broke any new ground; the disagreement between the majority and the dissenters was on the merits of the *Apprendi* decision itself, not whether *Apprendi* dictated the result

in *Blakely*.[3]  *Compare with Banks*, 542 U.S. at 415 (relying on the existence of dissenting opinions in *Mills v. Maryland*, 486 U.S. 367 (1988) to support argument that *Lockett v. Ohio*, 438 U.S. 586 (1978) did not compel the result in *Mills* where the very reason for the dissent in *Mills* was the argument that the *Lockett* principle did not compel the result in *Mills*).

To be sure, the *Blakely* decision startled many observers and has had a substantial impact on state sentencing systems.  It rendered portions of Washington's and other states' determinate sentencing systems invalid.  But the most that can be said of this outcome is, as Justice Breyer put it, that "[t]he Court [made] clear that it mean[t] what it said in *Apprendi*."  *Blakely*, 542 U.S. at 328 (Breyer, J., dissenting).

Making clear that a prior opinion meant what it said does not announce a new rule.  The new rule must "break[] new ground" in some way necessary to its holding.  *Graham v. Collins*, 506 U.S. 461, 467 (1993).  Because the holding in *Blakely* "was *dictated* by then-existing precedent" it was not a new rule.  *Banks*, 542 U.S. at 413.

At the same time, one passage of *Blakely* went beyond the facts of the case.  After applying *Apprendi*'s rule, this Court added: "When a judge inflicts punishment that the

---

[3]*See, e.g., Blakely*, 542 U.S. at 306 ("Those who would reject *Apprendi* are resigned to one of two alternatives."); *id.* at 310 (rebutting argument "that *Apprendi* works to the detriment of criminal defendants who plead guilty"); *id.* at 311-12 (rebutting contention "that *Apprendi* is unfair to criminal defendants"); *id.* at 312 (rebutting argument "that *Apprendi* will attenuate the connection between 'real criminal conduct and real punishment'"); *id.* at 328 (Breyer, J., dissenting) ("the Court makes clear that it means what it said in *Apprendi*.").

jury's verdict does not allow, the jury has not found all the facts which the law makes

essential to the punishment, and the judge exceeds his proper authority." *Blakely*, 542

U.S. at 304. This alternate formulation of the *Apprendi* rule was significant because it

suggested for the first time that the rule applied to binding sentencing thresholds *that are*

*not statutes*, such as the Federal Sentencing Guidelines. Yet, as explained above, this

passage was unnecessary to decide *Blakely* because both of the thresholds in that case, as

in *Apprendi*, were statutes. *See* Stith, *supra*, at 255-57.

Subsequently, *United States v. Booker* extended the Sixth Amendment to cover all

legally binding sentencing thresholds, not just statutory thresholds. And it did so with

reasoning that confirms that *Blakely* was dictated by *Apprendi*. This Court reiterated its

statement in *Blakely*, that "the requirements of the Sixth Amendment were *clear*" in

*Blakely. See Booker*, 125 S. Ct. at 749 (emphasis added). It then acknowledged that, in

contrast to *Blakely*, "the language used in our holding in *Apprendi*" does not cover the

Federal Sentencing Guidelines, because the Guidelines' sentencing thresholds are not

statutory. *Id.* at 753; *see also* R. Craig Green, *Booker and Fanfan: The Untimely Death*

*(and Rebirth?) of the Federal Sentencing Guidelines*, 93 Geo. L.J. 395, 401 (2005)

(*Booker* had to "br[eak] new ground" for this reason). This required the Court assess the

general "principles [*Apprendi*] sought to vindicate." *Booker*, 125 S. Ct. at 753. After

doing so, this Court held that the Sixth Amendment fact-finding requirements in *Apprendi*

should apply "[r]egardless of whether the legal basis of the accusation is a statute or in

11

guidelines promulgated by an independent commission." *Id.*

The *Blakely* and *Booker* holdings are not the same. Mr. Burton is not asking this Court to address whether *Booker* announced a new rule. The only question Mr. Burton asks this Court to consider is whether the *holding* of *Blakely* is a new rule.

**B.  This Court Should Resolve the Important Issue of Whether *Blakely* Applies Retroactively If It Is a New Rule.**

If *Blakely* is a new rule, its requirement that facts resulting in enhanced statutory maximums must be proved beyond a reasonable doubt applies retroactively to cases such as Mr. Burton's where sentences were based on contested facts proved only by a preponderance of the evidence. This Court has already held, in a combination of decisions, that rules related to the reasonable doubt standard apply retroactively. In addition, under the *Teague* test, reasonable doubt is a fundamental interest of transcending value necessary to the accuracy of criminal proceedings.

**1.  Through a Combination of Cases, This Court Has Already Made *Blakely* Retroactive.**

In *Tyler v. Cain*, 533 U.S. 656, 666 (2001), this Court held that a new rule may be made retroactive through a series of Supreme Court cases. In concurrence, Justice O'Connor expounded:

> This Court instead may "ma[k]e" a new rule retroactive through multiple holdings that logically dictate the retroactivity of the new rule.... [I]f we hold in Case One that a particular type of rule applies retroactively to cases on collateral review and hold in Case Two that a given rule is of that particular type, then it necessarily follows that the given rule applies retroactively to cases on collateral review.

12

*Tyler*, 533 U.S. at 668-69 (O'Connor, J., concurring). The rule in *Blakely* is precisely this type of rule.

This Court held that its decisions in *In re Winship*, 397 U.S. 358 (1970), and *Mullaney v. Wilbur*, 421 U.S. 684 (1975) apply retroactively because of the role of the reasonable doubt standard in assuring that punishment is only inflicted on the guilty. *See Hankerson v. North Carolina*, 432 U.S. 233, 240 (1977); *Ivan V. v. City of New York*, 407 U.S. 203, 204-05 (1972).

In *Ivan V.*, this Court gave the rule announced in *Winship* retroactive effect because "the major purpose of the constitutional standard of proof beyond a reasonable doubt announced in *Winship* was to overcome an aspect of a criminal trial that substantially impairs the truth-finding function." 407 U.S. at 205. Then, in *Hankerson*, the Court relied on *Ivan V.* to apply *Mullaney* retroactively because "the rule was designed to diminish the probability that an innocent person would be convicted and thus to overcome an aspect of a criminal trial that 'substantially impairs the truth-finding function.'" *Hankerson*, 432 U.S. at 242.

For the same reasons that *Ivan V.* controlled the retroactivity analysis in *Hankerson*, *Ivan V.* and *Hankerson* control the analysis here. *Blakely* is the precise example of a situation in which retroactivity is "necessarily dictate[d]" by an earlier decision of the Supreme Court. *Tyler*, 533 U.S. at 666.

13

2.    If *Blakely* Announced a New Rule, Its Requirement of Proof
Beyond a Reasonable Doubt is A Watershed Rule Of
Constitutional Procedure That Should Be Applied Retroactively
Under The *Teague* Rule On Retroactivity.

Under the second exception to the rule against the retroactive application of new

constitutional rules, a rule applies retroactively "if it requires the observance of 'those

procedures that . . . are "implicit in the concept of ordered liberty."'" *See Teague*, 489

U.S. at 307.  Such a rule vindicates two discrete concerns: the fundamental fairness of the

underlying proceeding; and the accuracy of that underlying criminal proceeding. *See*

*Saffle v. Parks*, 494 U.S. 484, 495 (1990).

The reasonable doubt element of *Blakely* is precisely the type of rule covered by

*Teague*'s second exception. *See generally Rethinking Retroactivity*, 118 HARV. L. REV.

1642 (2005) (tracing the roots of accuracy as requiring retroactivity and opining that

*Apprendi* should apply retroactively).  This Court's decision in *Schriro v. Summerlin*, 542

U.S. 348 (2004), demonstrates that the reasonable doubt standard is both fundamental and

necessary to accuracy in criminal cases.

In *Schriro*, this Court concluded that the decision in *Ring v. Arizona*, 536 U.S. 584

(2002), which applied *Apprendi* to Arizona's capital sentencing scheme, does not apply

retroactively under *Teague*.  The Court reiterated *Teague*'s second exception for rules

"implicating the fundamental fairness and accuracy of the criminal proceeding." *Schriro*,

542 U.S. at 352.  It then elaborated:  "That a new procedural rule is 'fundamental' in

some abstract sense is not enough; the rule must be one 'without which the likelihood of

14

an accurate conviction is *seriously* diminished.'" *Id.* (quoting *Teague*, 489 U.S. at 313).

Under this analysis, the Court rejected the Ninth Circuit's conclusion that *Ring* fell within

the second *Teague* exception, concluding that judicial factfinding under a reasonable

doubt standard was not shown to "seriously diminish" the accuracy of the sentencing.

*Id.* at 356.

In *Schriro* this Court also recognized the fundamental role that the reasonable doubt

standard plays in assuring accuracy in criminal proceedings.  The Court had no question

*Apprendi* rights were "fundamental."  *Schriro*, 542 U.S. at 358.  The question became

whether the difference between judicial and jury factfinders jeopardized the accuracy of

convictions sufficiently to require retroactive application of the new rule.  The analysis of

the competing strengths and weaknesses of factfinders assumed application of the beyond

a reasonable doubt standard of proof.  The jury trial right only applied prospectively

because judicial factfinding beyond a reasonable doubt adequately protected accuracy.

Under a preponderance standard, however, the protection of accuracy is as lacking as the

right to a jury.

This Court has reiterated the central role of the reasonable doubt standard to

protecting the rights of the accused and the accuracy of criminal convictions in many

other contexts before *Schriro*.  In finding that reasonable doubt instructional error could

not be harmless, the Court emphasized the vital role of the reasonable doubt standard in

avoiding convictions based on factual error.  *See Cage v. Louisiana*, 498 U.S. 39, 39-40

15

(1990) ("[I]t is a prime instrument for reducing the risk of convictions resting on factual error."). In *Winship*, the Court stated that the reasonable doubt standard "plays a vital role in the American scheme of criminal procedure." 397 U.S. at 363.

## CONCLUSION

For the foregoing reasons, this Court should grant the petition for a writ of certiorari.

DATED this 10th day of February 2006.

Respectfully submitted,

Brian Tsuchida
*Counsel of Record*
Office of the Federal Public Defender
1601 Fifth Avenue, Suite 700
Seattle, WA  98101
(206) 553-1100
*Counsel for Applicant*

# Appendix

Westlaw.

142 Fed.Appx. 297

Page 1

142 Fed.Appx. 297, 2005 WL 1793351 (C.A.9 (Wash.))
**(Cite as: 142 Fed.Appx. 297)**

Briefs and Other Related Documents

This case was not selected for publication in the Federal Reporter.Please use FIND to look at the applicable circuit court rule before citing this opinion. (FIND CTA9 Rule 36-3.)

United States Court of Appeals,Ninth Circuit.
Lonnie Lee BURTON, Petitioner-Appellant,
v.
Doug WADDINGTON, Respondent-Appellee.
No. 03-35095.
D.C. No. CV-02-00140-RSL.

Argued May 3, 2004.
Submission Vacated May 11, 2004.
Submitted July 28, 2005.
Decided July 28, 2005.

**Background:** State inmate filed petition for writ of habeas corpus. The United States District Court for the Western District of Washington, Robert S. Lasnik, J., denied petition, and petitioner appealed.

**Holdings:** The Court of Appeals held that:

1(1) petitioner did not have to seek leave to file second or successive habeas petition;

2(2) finding that sentencing court was not vindictive in imposing exceptional sentence was reasonable; and

3(3) imposition of exceptional sentence did not violate *Apprendi*.

Affirmed.

West Headnotes

[1] **Habeas Corpus 197** ⟶894.1

197 Habeas Corpus
    197IV Operation and Effect of Determination; Res Judicata; Successive Proceedings
        197k894 Refusal to Discharge; Subsequent Applications; Prejudice
            197k894.1 k. In General. Most Cited Cases
State inmate was not required to seek leave to file second or successive habeas petition, despite dismissal of his prior petition, where no meaningful relief could have been available when first petition was filed, since inmate's challenge to his sentence was still pending before state court of appeal. 28 U.S.C.A. § 2244(b)(3)(A).

[2] **Habeas Corpus 197** ⟶507

197 Habeas Corpus
    197II Grounds for Relief; Illegality of Restraint
        197II(B) Particular Defects and Authority for Detention in General
            197k503 Judgment, Sentence, or Order
                197k507 k. Excessiveness. Most Cited Cases
State court's determination that sentencing court was not vindictive in imposing exceptional sentence at petitioner's third sentencing hearing was not contrary to, and did not represent unreasonable application of clearly established federal law under *North Carolina v. Pearce*, and thus did not warrant federal habeas relief, where petitioner's third sentence was lower than his original sentence. 28 U.S.C.A. § 2254.

[3] **Jury 230** ⟶34(1)

230 Jury
    230II Right to Trial by Jury
        230k30 Denial or Infringement of Right
            230k34 Restriction or Invasion of Functions of Jury
                230k34(1) k. In General. Most Cited Cases

**Sentencing and Punishment 350H** ⟶322

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

142 Fed.Appx. 297

142 Fed.Appx. 297, 2005 WL 1793351 (C.A.9 (Wash.))
**(Cite as: 142 Fed.Appx. 297)**

350H Sentencing and Punishment
    350HII Sentencing Proceedings in General
        350HII(F) Evidence
           350Hk322 k. Degree of Proof. Most Cited Cases
Sentencing court's imposition of exceptional sentence following defendant's convictions for rape, burglary, and robbery did not violate *Apprendi*, where statutory maximum for each offense was life imprisonment, and sentence imposed was for total of 562 months. U.S.C.A. Const.Amend. 6; 28 U.S.C.A. § 2254; West's RCWA 9A.20.021(1)(a), 9A.44.040, 9A.52.020(2), 9A.56.200(2).

***298** Brian Tsuchida, FPDWA-Federal Public Defender's Office, Seattle, WA, for Petitioner-Appellant.
John J. Samson, AGWA-Office of the Washington Attorney General, Olympia, WA, for Respondent-Appellee.

Appeal from the United States District Court for the Western District of Washington; Robert S. Lasnik, District Judge, Presiding.

Before TASHIMA, PAEZ, and BEA, Circuit Judges.

MEMORANDUM *

    FN* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3.

**\*\*1** Lonnie Lee Burton ("Burton") appeals the district court's denial of his petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. In 1994, a jury convicted Burton of rape in the first degree, robbery in the first degree, and burglary in the first degree. [FN1] Burton challenges his consecutive sentence of 304 months for the rape, 153 months for the robbery, and 105 months for the burglary, for a total of 562 months on several constitutional grounds. We have jurisdiction pursuant to 28 U.S.C. § 2253 and we affirm. We review *de novo* a district court's denial of a petition

for writ of habeas corpus under 28 U.S.C. § 2254. *Alvarado v. Hill*, 252 F.3d 1066, 1068 (9th Cir.2001).

    FN1. As the parties are familiar with the facts, we do not recite them here.

I.

[1] The state argues that the district court lacked jurisdiction over Burton's 2002 habeas petition because this court had not granted leave to file a " second or successive" petition pursuant to 28 U.S.C. § 2244(b)(3)(A). We disagree. In 1998, Burton filed his first federal habeas petition challenging his conviction. At that time, the state court judgment as it related to Burton's sentence was not yet final because Burton's challenge to his sentence was still pending before the state court of appeal. Because Burton had not yet exhausted his federal constitutional claims in state court at the time he filed his first federal habeas petition, they were not ripe for federal habeas review. *See* 28 U.S.C. § 2254(b)(1)(A) (requiring a state prisoner to exhaust his claims in state court before he is allowed to bring an action in federal court for habeas relief). Therefore, Burton was not required to challenge his sentence in his first federal petition because no meaningful relief would have been available at that time. *See LaGrand v. Stewart*, 170 F.3d 1158, 1159 (9th Cir.1999) (order). We agree with the district court *\*299 that Burton's petition is not "second or successive" because he had a "legitimate excuse for failing to raise a claim at the appropriate time." *See McCleskey v. Zant*, 499 U.S. 467, 490, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991).

II.

Burton claims that his due process rights were violated when the trial court increased his offender score at the sentencing hearing by separately counting his Indiana theft and fraud convictions, rather than aggregating them as it had done in the first and second sentencing hearings. Because Burton has not shown that the Washington Court of

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

142 Fed.Appx. 297

142 Fed.Appx. 297, 2005 WL 1793351 (C.A.9 (Wash.))
**(Cite as: 142 Fed.Appx. 297)**

Appeals' application of the law of the case doctrine was "contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States" 28 U.S.C. § 2254(d)(1), we affirm the district court's denial of relief on this claim.

III.

[2] Burton next argues that his due process rights were violated because the sentencing court was vindictive in imposing an exceptional sentence at his third sentencing hearing. As the Washington Court of Appeals noted, Burton's third sentence is lower than his original sentence, and is therefore not presumptively vindictive under *North Carolina v. Pearce*, 395 U.S. 711, 725, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), *overruled on other grounds, Alabama v. Smith*, 490 U.S. 794, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989). Because Burton has not shown that the trial court was vindictive in violation of clearly established federal law, Burton's claim is not cognizable under 28 U.S.C. § 2254(d)(1).

IV.

**2 Finally, Burton argues that his exceptional sentence was imposed in violation of his Sixth Amendment rights under *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). We expanded the Certificate of Appealability and requested supplemental briefing on the impact of *Blakely* and *United States v. Booker*, --- U.S. ----, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), on this case.

Although *Apprendi* was decided before Burton's conviction became final and may therefore be applied to this case, the state argues that *Blakely* -decided after Burton's conviction became final-established a new rule that does not apply retroactively on collateral review. *See Teague v. Lane*, 489 U.S. 288, 310, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). We agree. *See Schardt v. Payne*, 414 F.3d 1025 (9th Cir.2005) (holding that *Blakely* does not apply retroactively to a 28 U.S.C. §

2254 habeas petition).

[3] *Apprendi* held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490, 120 S.Ct. 2348. The statutory maximum for each of the offenses to which Burton was found guilty was life imprisonment. *See* WASH. REV.CODE §§ 9A.44.040(2), 9A.52.020(2), 9A.56.200(2) (classifying rape in the first degree, burglary in the first degree, and robbery in the first degree as class A felonies); § 9A.20.021(1)(a) (setting statutory maximum for class A felonies as life imprisonment). At Burton's third sentencing hearing, the judge imposed consecutive sentences of 304 months for the rape conviction, 153 months for the robbery conviction, and 105 months for the burglary conviction, for a total of 562 months. Because*300 the sentence on any individual count, and the total sentence imposed does not exceed the statutory maximum of life imprisonment, it does not violate *Apprendi*. *See United States v. Shryock*, 342 F.3d 948, 989 (9th Cir.2003) (holding that where statutory maximum for murder in either the first or second degree was life imprisonment, court did not err in sentencing under provision for first degree murder on the basis of judge-found facts); *United States v. Sua*, 307 F.3d 1150, 1154 (9th Cir.2002) (holding that *Apprendi* was not violated where sentence imposed did not exceed the statutory maximum); *see also United States v. Buckland*, 289 F.3d 558, 570 (9th Cir.2002) (en banc) (finding no *Apprendi* violation where none of the individual sentences imposed consecutively exceeded the statutory maximum for that offense).

Accordingly, we **AFFIRM**.

C.A.9 (Wash.),2005.
Burton v. Waddington
142 Fed.Appx. 297, 2005 WL 1793351 (C.A.9 (Wash.))

Briefs and Other Related Documents (Back to top)

• 2004 WL 540092 (Appellate Brief) Petitioner-Appellant's Reply Brief (Jan. 20, 2004)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

RECEIVED

OCT 1 7 2005

FEDERAL PUBLIC DEFENDER

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

OCT 1 3 2005

CATHY A. CATTERSON, CLERK
U.S. COURT OF APPEALS

LONNIE LEE BURTON,

Petitioner - Appellant,

v.

DOUG WADDINGTON,

Respondent - Appellee.

No. 03-35095

D.C. No. CV-02-00140-RSL
Western District of Washington,
Seattle

ORDER

Before:    TASHIMA, PAEZ, and BEA, Circuit Judges.

The panel has voted to deny the petition for panel rehearing.

The full court has been advised of the petition for rehearing en banc, and no

active judge of the court has requested a vote on whether to rehear the case en

banc. Fed. R. App. P. 35(b).

Therefore, the petition for rehearing and the petition for rehearing en banc

are DENIED.

4a